Good morning, Honors. My name is J.M. Bejar and I represent Maria Archila-Rivera, the petitioner in this case. The issue in this case is whether single indigent women in El Salvador or more simply all women in El Salvador constitute a cognizable group to be treated under the asylum laws of the United States. I think that the most important case right now on this issue is this court's decision in Perdomo, which was issued last year and which was cited by us to the court through a 28-J letter just last week. In Perdomo, the Ninth Circuit Court of Appeals considered an asylum application by a Guatemalan woman who argued that all women in Guatemala comprise a particular social group within the meaning of the act. The Board of Immigration Appeals, similarly as it did in our case, rejected this social group as too broad and labeled it a demographic rather than a cognizable social group under the Immigration Act. And this court remanded concluding that the Board's holding was inconsistent with its own opinion in matter of Acosta as well as in Hernandez-Montiel. If I were to use one sentence out of the one page of text that the Board of Immigration Appeals wrote in dismissing the appeal, it's the one where it refers to the class of women in El Salvador and it says, quote, women who fall within this broadly described group are not united by a voluntary association or by an innate characteristic that is so fundamental to the identities or consciences of the members that the members either cannot or should not be required to change it. Well, if one's gender is not an innate characteristic that is fundamental to the person's identity, I don't really know what is. Assuming for a moment that that is indeed the case, that Perdomo does instruct us that Salvadoran women, indigent women, are a group, the IJ went on and found that there would be no causal connection between that classification and the situation that the petitioner confronted. Isn't that right? That is correct, but I think that it is also flawed because what the court said was that there had been five incidents of violence that the woman had testified to. Three involved women, two involved men, so therefore he concluded that because two of them involved men, then therefore she had no connection. The reality is that if you want to look at it from a statistical standpoint, two men, three women, 40 percent men, 60 percent women. But shouldn't we also look at the nature of those incidents? The nature of them, as I understand it, were robberies, apparently for money. It didn't appear that there was any indication that it was targeting in any fashion based upon the identifiable group. The argument, Your Honor, is that yes, those particular incidents were based on robberies and they were based on money. However, the majority of the targets were female. Why? Because they are viewed as being weaker, because there is impunity in El Salvador, and because the record is replete with examples from non-profit organizations, Amnesty International, the United Nations High Commissioner for Refugees, and even the U.S. State Department acknowledges that violence against women, specifically against women, is a matter of epidemic proportions in El Salvador. I assume that every robbery is motivated by the gender of the victim. That is correct. The robberies are typically motivated by money. But when the victims are chosen on the basis that I have more of a chance of overpowering this person because of the way she sees herself, because of the way the police see me, because of all the other factors that surround this, I mean, it's a known fact. And it's not only a known fact, but it's documented, as I said, by the State Department, by the U.N. High Commissioner for Refugees, Amnesty International, and a variety of other organizations that are reputable. Well, I was just going to ask you what the closest case was that you would rely on for the proposition that robberies that necessarily, by their nature, tend to target vulnerable people, that that is on account of gender. I don't base that on a specific case, Your Honor. That's my extrapolation from what I see. But I need to point out to the Court that there is a second issue, which is the well-founded fear of future persecution. It's not just past persecution. And unlike the petitioner in Perdomo, who had not suffered past persecution, the Court remanded on the basis of her fear of future persecution. My client also raised the issue of fear of future persecution. And I would point out that even though the government indicated as brief that we did not address those issues, I would direct the Court to pages 31 through 35 of our brief. The government cited Don and Martinez-Serrano. And those cases are ill-cited. In Don, there was no mention whatsoever of the issue, except in the statement of the case. And in Martinez-Serrano, the petitioner failed to address how the Board of Immigration Appeals abused its discretion in denying the motion to reopen. In our case, all this evidence was thoroughly argued. And it was raised from the very beginning at the immigration judge level. And the record is replete with copies of the reports showing that there have been murders and decapitation of women, strictly of women, in El Salvador that have gone untouched by the authorities, except for one case in which there was an investigation and no conclusion. Your Honors, I would like to reserve some time for rebuttal. You may. Thank you. Good morning, Your Honors. Ann Wilhoff, the respondent, United States Attorney General Holder. May it please the Court. I want to start out by pointing out that Judge Seaborn made an interesting point. It's tempting and distracting to get bogged down in the social group issue, because that's an interesting issue in an evolving area of the law. But the Court need not do that in this case. The Board in this case denied the asylum claim on two dispositive alternative grounds. One of them, each wholly independent. The first one was that there is no nexus or connection. Even if we assume that indigent single women in El Salvador are a particular social group, there is no connection, certainly to the past harm, nor does the evidence show that there is a well-founded fear of future harm based on that alleged social group. There is certainly evidence of violence against women. There is certainly evidence of all kinds of violence in El Salvador, men and women. And again, the Court clearly, the Board clearly held the past harm did not rise to, or did not connect to the claimed social group. And I think that I, from hearing the opening argument, I believe that, I don't want to speak for petition, but I don't think that they're arguing the past harm was in fact connected to her women indigent status. Their argument seems to focus more on the future. If that is the case, I would agree that the past harm, again, every bit of it is a robbery. Petitioners asked many times, were you, do these robberies occur to men and women? Yes, boys and girls. Her mom was robbed, her sister, her brother, another male friend was robbed. They're all waiting for them at the bus stop. This is random violence in El Salvador that's well-documented, well-documented in this record, and this Court's very familiar with that, having looked at many cases involving El Salvador in crime there, gang-related activity. I would refer the Court to Santos-Limas, Ramos-Lopez, Ramos-Barrios. Could I focus from you for a moment on the Convention Against Torture claim, the C.A.T. claim? Under Aguilar-Ramos, it indicates that the I.J. has to take into consideration country reports in particular, and other information regarding the conditions in the country. In this case, there's some indication the I.J. immigration judge did look at one country report, but apparently didn't look at the others, or didn't indicate that there was any review of the others. Isn't that a problem under Aguilar-Ramos? Well, I don't, I don't, I understand your proposition that's correct under that case, but I think that the agency is not required to write an exegesis on every single piece of evidence. This is a very thorough, lengthy opinion by the I.J. and the Board as well, and the fact that they indicated they considered the evidence without expressly parsing out each piece, and that, I believe, is what is required, and I believe the Board did that. Now as far as The Board adopted the I.J. with respect to torture, I think. The I.J. didn't refer to all of the documents by name, or, and seemed to, with respect to its torture discussion, seemed, as Judge Seaborg has noted, seemed to be talking about only one, where there was more than one in evidence. Did the evidence, however, did the I.J.'s decision reflect that he or she did look at all the evidence with respect to the asylum claim? Again, I think that, I believe the agency did consider all of that, and basically, the evidence doesn't compel a conclusion that the government at El Salvador acts with willful blindness to this type of activity. But how do we, going back to what was considered, how do we know what was considered? Well, the agency, again, wrote a very thorough opinion and said the government, that they considered the evidence without expressly parsing out each piece. But I think the record demonstrates that the evidence was considered. Again, I don't think the law requires a specific mentioning of every piece of evidence. It doesn't show that the government takes a blind eye to the violence. Petitioners have pointed to nothing that would compel a contrary conclusion. I think on that issue, we're looking at a factual, substantial evidence standard. They have pointed to absolutely nothing in this record that would compel a conclusion contrary to what the agency found. They've pointed to violence in the country, violence against women, but the documents... Doesn't Aguilar-Ramos say it's premature to consider that question? In that case, it seemed rather clear that the question was what was considered, not the result of that The issue is what was considered and what wasn't. And the immigration judge in this case made specific reference to one country report, the 2001, but then didn't say anything about any other reports, even though there were other reports. So under that case, doesn't it have to go back for further review? Your Honor, I don't believe that it does, because I think the agency, again, did consider the evidence, and that determination is subject to substantial evidence standard. I don't believe that the petitioners have pointed to anything that would compel a conclusion contrary to the agency's. There may be evidence that could support a contrary conclusion, but that's not the standard. The evidence is fraught with evidence of the government, in fact, trying to quell this type of violence and gang violence. The evidence just does not compel the conclusion that the government turns a blind eye and that there's rampant targeted violence against women, particularly the women, indigent and single, as he is claiming. Counsel, has Judge Gould with a question for you? Yes. Is there a place in the record where the IJ says, in some type of catch-all phrase, I've considered all the evidence that was admitted? Or a place where the board says they've considered all the evidence? To answer your question, I don't believe, no. I do not believe it's that poignant, as you just asked. Okay. Then my follow-up question is, is there a presumption of correctness? That is, do we have to presume that the agency reviewed all the admissible evidence? Or does Aguilar Ramos mean they have to somehow point it out? Well, Aguilar Ramos read in conjunction with this Court's other cases that talk about the agency is required to consider all the evidence. But the fact that the writing didn't expressly parse out each piece, I believe, is consistent with their duty. They've considered the evidence. There's a discussion. The only indication here, as I understand it, that they may not have considered all the evidence is that they used the singular for country report, and there were two country reports. That's what I understand. And it, the, should that, I guess, should that make a difference, if the law is that you have to look at all the evidence? I think that, I don't know why they used the singular, Your Honor. But I don't, I think the opinion was well-reasoned and thorough. And I think that the Court said we don't find, we don't find, you know, willful blindness, we don't find this targeted willful blindness in not helping out women in violent situations. In the appeal to the BIA, was there any argument that they, that the agency didn't consider all of the evidence? No, Your Honor. There was not. And I guess before our time runs out, I want to point out, because there's a lot of reliance on Perdomo case, but again, the Perdomo case, we only get to whether, the Court needs only reach that issue of whether single indigent women in El Salvador are a social group, if the Court finds the other ruling on nexus to be not supported by substantial evidence. And I believe that the record clearly supports that. And social group is not relevant to the torture convention, as the Court knows. So, but to the extent the Court may want to look at the Perdomo case that was cited in the 28-J letter, again, the Perdomo case simply said the Board improperly relied on a Ninth Circuit case to conclude that all women cannot be a social group. Perdomo does not rule that women are a social group. It actually, it does not do that. It doesn't go that far. Perdomo sends the case back to the agency and basically says, they can be and they may be. Now you need to decide, Board, by applying all your precedent, including the Acosta immutability test, and it also says you need to apply the particularity and social visibility test, which this Court has accorded deference to. This Court has accorded deference to the Board's essentially three-pronged analysis on social group. So I would say that to the extent you would read the Board's decision in this case as saying women or gender is not immutable, to the extent you read it to say that, I would agree with Petitioner. That's not a correct reading. However, the Board in this case went further than that. It said, even if we assume they have that immutability issue, they still haven't satisfied the other two prongs, which is social visibility and particularity. You have used your time. Thank you, Your Honor. Thank you. Thank you. Your Honor, with regard to the nexus not being established, please bear in mind that there are two issues here, past persecution, which is where the nexus might be found, and fear of future persecution. Fear of future persecution, we don't know because it has not happened. I would point out to the Court that this Court, as cited in our 28J letter in April of this year, remanded a very similar case, Chavez Benavides, who is also a female from El Salvador, not from Guatemala, as Perdomo is, but from Guatemala. And I would also point out that in Mohammed, which is an older case, because we can see how this issue has been evolving, this Court held, although we have not previously recognized females as a social group, the recognition that girls or women of a particular clan or nationality, or even in some cases females in general, may constitute a social group is simply a logical application of the law. That is the basis for the decision in Perdomo. It is a remand to the BIA to find whether females are a social group. Size is not what group, and whether the person identifies with it and should be required to or can change. Could you address the CAT claim and the issue we were discussing before on what's been reviewed? Certainly. The Court raised Aguilar-Ramos, and the Court is required, the immigration judge is required to address all evidence presented in order to establish what his decision is based on. Do you follow from that that it needs to be, under that case and other case law, it has to be memorialized in a particular way? Certainly. There is case law from this circuit, and I can't remember the name of the case, I believe it's Yepes Prado, which specifically the holding was that there cannot be a presumption that something was considered by a judge which was not referred to in the opinion, in the decision. So it cannot be assumed that a judge considered something if he has not in some way addressed it. What case were you relying on? I believe the name is Yepes Prado, Your Honor, I wasn't prepared to answer that question. I'm just going from memory. But I do know that there is case law in this circuit that specifically says that the Court cannot consider that a judge considered something that is not addressed in his opinion. Don't we also have case law that says there's a presumption that the I.J. reviews the record? I'm sorry? Don't we also have case law that there's a presumption that the I.J. has reviewed the record? Yes, Your Honor, but there is obviously there's contrary case law because there is clearly case law that says that the when something is presented that if the Court does not address it, it cannot be assumed that he considered it. Okay, thank you. You have your time. Are there any further questions? Yes, I have a comment. If there's a case you are relying on that rejects like a presumption that the I.J. or the Board considered admitted evidence, you should give a cite to that case to the clerk of the Court. You can do it after argument. If you can't recall it now, try to recall it. Give it to her. There's a form you can fill out, and then we'll be able to review the case you're thinking of. If you can't think of it today, just send a letter and we'll have that. Thank you very much. I will do that. Thank you. If you could do it before you leave the courtroom, it would be good. Before this morning, it would be good. Thank you. And give a copy to the opposing, send a copy to the opposing counsel. All right, the matter just argued is submitted for decision subject to the conversation just had.
judges: Seeborg, Schroeder, Gould